UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP BROWN,

       Petitioner,                                              Case Number 09-CV-14850
                                                            Honorable Patrick J. Duggan

DAVID BERGH,

       Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Philip Brown's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On February 10, 2003, following a jury trial in Oakland County Circuit Court, Petitioner was convicted of first-degree premeditated murder for the death of Randy Pardy, and felonious assault. Petitioner was sentenced to life in prison for the murder conviction and 23-to-48 months for the assault conviction.

The petition, along with Petitioner's numerous supplemental pleadings, raise the following claims:

> I. The court violated Petitioner's confrontation rights by excluding evidence of three pending felony charges against the state's key witness that the jury could have used to infer bias and motive to fabricate or slant his testimony.

> II. The trial court denied Petitioner's right to be present at a critical stage of trial when the court offered new unsupported evidence to the deliberating jury during supplemental instructions.

> III. The trial court erred by giving the deliberating jury new unsupported evidence in the form of a "testimonial statement," thereby becoming an unsworn witness against Petitioner and denying him the right to confrontation in his absence.

> IV. Petitioner was denied an impartial judge when the trial court gave the

deliberating jury new unsupported evidence not admitted during trial.

V. The trial court violated due process and a fair trial by instructing the jury with a conclusive mandatory presumption of fact on a contested issue, directing a verdict on a disputed element.

VI. The trial court violated Petitioner's right to counsel at a critical stage, where counsel failed to contest the state's evidence and waived Petitioner's right to be present during the supplemental jury instruction.

VII. Petitioner's incriminating statement to police should have suppressed because they were obtained in violation of the right to counsel and without *Miranda* warnings.

VIII. The prosecutor engaged in repeated and deliberate acts of misconduct throughout trial including the presentation of false evidence.

IX. The trial court violated Petitioner's right to present a defense when it arbitrarily, mechanically, and disproportionately excluded a relevant and material defense witness.

X. The trial court lacked jurisdiction to try Petitioner's case.

XI. Petitioner was not arraigned upon the Criminal Information as required by state and federal law.

XII. Trial counsel was constitutionally ineffective for failing to object to numerous instances of prosecutorial misconduct.

XIII. The Michigan Supreme Court's last reasoned judgment relying upon Michigan Court Rule 6.502(G) is not applicable under the facts to foreclose federal habeas review of the claims presented in Petitioner's first motion for relief from judgment.

XIV. Appellate counsel was ineffective on direct appeal for failing to raise meritorious claims.

XV. The trial court violated Petitioner's right to a public trial by conducting a side-bar conference regarding jury instructions outside the presence of Petitioner, the jury, or the public.

XVI. The trial court erred in instructing the jury on the defenses of self-defense and imperfect self-defense.

XVII. Petitioner's confrontation rights were violated by the use of "surrogate"

testimony by sending a note to the jury indicating that there were no fingerprints found on the knife.

The Court finds that all of Petitioner's claims are without merit.  Therefore, the petition will be denied.  The Court will, however, grant Petitioner a certificate of appealability with respect to Claims I, II, III, IV, V, VI, XV, and XVII, but deny a certificate of appealability with respect to his remaining claims.  The Court will also grant Petitioner permission to proceed on appeal in forma pauperis.

## I.  Facts and Procedural History

At trial, the evidence indicated that Brian Weigold lived in an apartment at Petitioner's house.  Weigold worked with Randy Pardy on Pardy's property repairing a semi-truck.

On April 3, 2002, Pardy's wife called Randy at Petitioner's house.  Pardy was visiting Weigold about their work and said he was just leaving.  He did not sound upset and did not mention Petitioner.

A short time later, Weigold called Pardy's wife and told her there had been an accident.  He did not know if Randy was alright.  Pardy's wife and father arrived at Petitioner's house and discovered that Pardy was dead.

Oakland County Sheriff Deputy Sarah Myers arrived at the residence at 6:15 p.m., less than a minute after she was dispatched.  Oxford Police Officer Thaddeus Lambris also arrived at the scene.  Weigold approached the officers, told them that someone had been stabbed, and led them to a bathroom.  The officers found that a bathroom door had been broken open, and inside they found Randy Pardy lying on the floor.  Myers saw a broken-off arrow sticking out of Pardy's chest.  His clothes were saturated with blood.  Pardy was moved to the living room where medical technicians tried to revive him.  The attempts failed, and he was pronounced dead at the scene.

Blood smears were found throughout the kitchen and bathroom. A bow, a trigger release, and an arrow were found on the property outside. According to Oakland County Crime Laboratory specialist Robert Charlton, the pattern of blood drops on the kitchen floor and refrigerator indicted that the victim was moving backward while he was bleeding. Charlton saw two wounds on the right side of Pardy's body, an arrow wound and a stab-type wound. A bloody serrated hunting knife was found in a trash can in the bathroom. Bloody boot prints made by Pardy's boots were found on the bathroom floor and on the inside of the bathroom door.

Weigold testified at trial that he had lived in a pole barn at Pardy's property, but moved to an apartment in Petitioner's house. He identified the bow, trigger release, and arrows as belonging to Petitioner. Weigold was working on a semi-truck located on Pardy's property. Petitioner was unhappy with the payment arrangement between Pardy and Weigold for the work.

On the day of the incident, Pardy came into Petitioner's house without knocking, as he had done on previous occassions. As Pardy walked with Weigold towards Weigold's room, Petitioner said, "Why don't you learn to knock like a normal fucking person." Pardy responded, "Lick my nuts." Petitioner slammed his bedroom door shut.

Pardy and Weigold talked briefly in Weigold's room. According to Weigold, Pardy was unarmed. Pardy then talked to his wife on his cell phone, telling her that he was leaving. Within seconds of Pardy leaving the bedroom, Weigold heard him yell, "Oh my God, I've been shot." Pardy had been walking towards the living room and not towards Petitioner's bedroom.

Weigold did not hear any altercation before Pardy yelled. Weigold saw Pardy leaning against the doorway to the kitchen, with an arrow sticking out of his arm. He saw Petitioner was wearing the bow's trigger release on his wrist, and then he saw Petitioner run at Pardy and jab at

him.  Pardy ran into the bathroom.  Weigold stopped Petitioner and said, "What the fuck are you doing?" Petitioner then swung a knife at Weigold.  Weigold let go of Petitioner, ran out of the house, and called 9-1-1.  Weigold saw Petitioner emerge from the house and throw the bow over a fence. Petitioner got into a car, and as he drove past Weigold he said, "Keep your fucking mouth shut." Weigold ran back into the house and found Pardy lying in the bathroom.  Pardy said he had been stabbed.

Petitioner was arrested in Georgia three days later.

The medical examiner testified that the arrow had penetrated Pardy's right arm and went through to his chest.  Pardy had also suffered a stab wound on the left side of his abdomen, and another stab wound to the center of his chest.  This second stab wound went between Pardy's ribs and into his heart.

Stephen Akers testified for the defense that he had lunch with Petitioner on the day of the incident.  Petitioner's demeanor was normal.  Akers admitted on cross examination that Petitioner talked about being followed and monitored by the government.

Petitioner testified in his own defense.  He said that when Pardy arrived at the house, he insulted Petitioner and pushed him into a chair, and Weigold laughed.  After a verbal altercation in the living room, Petitioner testified that Pardy grabbed a knife off of a bookcase.  Petitioner ran into the utility room and grabbed his bow.  As Pardy approached with the knife, Petitioner shot him and the knife dropped to the floor.  Pardy tried to reach for the knife, but Petitioner beat him to it and stabbed him in the chest.  As Pardy started to fall backward, Petitioner swung again and hit Pardy in the side.  Weigold then grabbed Petitioner and yelled something at him. Petitioner then went to the bathroom and kicked the door open.  Pardy was lying on the floor.  Petitioner tried to pull the

arrow out of Pardy, but it broke. Petitioner then panicked, threw the bow over a fence, and drove away.

After deliberations, the jury found Petitioner guilty as charged. He was subsequently sentenced as indicated above.

The procedural history of Petitioner's pursuit of appellate relief is quite complex. In summary, though, Petitioner filed an appeal of right in the Michigan Court of Appeals raising six claims:

> I. The trial court erred in excluding evidence that the state's key witness had a pending criminal case in which he was facing a significant prison sentence where the existence of that case was relevant to the witness' credibility.

> II. The trial court erred in permitting an Oakland County Sheriff's Deputy to testify as an expert witness.

> III. The trial court erred in precluding Defendant from presenting a complete defense where the court prohibited Defendant from offering a witness that would have impeached the prosecution's key witness.

> IV. Defendant was denied his rights to due process and a fair trial as a result of the prosecutor's misconduct.

> V. The trial court erred in permitting testimony that Defendant had admitted to previous acts of violence, where that statement was made to law enforcement after Defendant had obtained counsel.

> VI. The trial court erred when, in answering a jury question, the court offered substantive evidence that was not introduced at trial.

On August 19, 2004, the court affirmed Petitioner's conviction and sentence. *People v. Brown*, No. 247313, 2004 WL 1857995 (Mich. Ct. App. Aug. 19, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but the Court denied his application on June 28, 2005. *People v. Brown*, 472 Mich. 937 (2005) (table).

On June 12, 2006, Petitioner filed a motion for relief from judgment in the state trial court

in which he raised six additional claims:

>  I. The trial court violated Brown's rights by excluding him from a critical stage, without adequate or proper waiver, and that the trial court lost jurisdiction by Brown's absence during trial.
>
>  II. The trial court violated Brown's right to an impartial jury and his right confrontation when it instructed the jury with substantive material evidence not admitted during trial, during jury deliberations.
>  III. Trial counsel erred when he waived Brown's right to be present and failed to object to a material statement offered for the first time to the deliberating jury.
>
>  IV. The prosecutor engaged in misconduct in submitting material to the jury not supported by evidence.
>
>  V. Ineffective assistance of counsel on direct appeal constitutes for failure to raise grounds under M.C.R. 6.508(D)(3).
>
>  VI. Brown was neither arraigned nor entered a plea; the trial court violated Brown's rights when it failed to proceed against Brown by presentment of information in open court; and the lack of proper arraignment deprived the trial court of jurisdiction, and requires automatic reversal.

The trial court denied the motion on August 10, 2006, and denied reconsideration on March 29, 2007. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which the court denied. *People v. Brown*, No. 283419 (Mich. Ct. App. May 12, 2008). Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court, which the court denied on March 23, 2009. *People v. Brown*, 483 Mich. 912 (2009) (table).

Meanwhile, on November 4, 2008, Petitioner filed a state habeas action in the Circuit Court for Manistee County, Michigan, attempting to raise issues challenging his conviction. The Manistee Circuit Court denied the action on November 14, 2008. Petitioner's subsequent appeals of those decisions were rejected by the Michigan Court of Appeals and the Michigan Supreme Court. *Brown v. Dep't of Corrections*, No. 289220 (Mich. Ct. App. Apr. 8, 2009); *Brown v. Dep't of Corrections*, 484 Mich. 870 (Aug. 6, 2009) (table).

-7-

On April 20, 2009, Petitioner filed a delayed motion for a new trial in Oakland County Circuit Court, which the court rejected as improperly filed. The trial court then permitted Petitioner to file a second successive post-conviction motion, which Petition filed on January 29, 2010. The state trial court ultimately denied this motion on December 17, 2010. While it appears that Brown initially appealed from the denial of this motion, he subsequently withdrew that appeal. *People v. Brown*, Court of Appeals No. 306587 (Mich. Ct. App. Dec. 16, 2011).

While this motion was pending, Petitioner filed several federal habeas petitions that for various reasons were dismissed or stayed pending exhaustion of his state court remedies. By order dated October 7, 2010, the present case was stayed pending resolution of Petitioner's second attempt at obtaining state collateral review. Another motion for relief from judgment was apparently filed in June 2012, and denied by the trial court on September 19, 2012. The trial court noted that this motion was a successive motion for relief from judgment under M.C.R. 6.502(G) and found that it did not fall within one of the exceptions to the bar against successive motions under that rule. Petitioner did not appeal the denial of this motion.

On September 25, 2012, this Court granted Petitioner's motion to lift the stay, and ordered Respondent to file a responsive pleading. A response was filed on Novmeber 21, 2012, and the Court also granted Petitioner permission to file multiple supplemental briefs. The case is now ready for decision.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 2066 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting

-9-

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 2796 (1979) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

### III. Analysis

**A. Exclusion of Impeachment Evidence**

Petitioner's first claim asserts that the trial court erred in prohibiting him from cross examining Weigold regarding the fact he was facing criminal sexual conduct charges at the time of

Petitioner's trial. Petitioner asserts that he was therefore deprived of the opportunity to suggest through cross-examination that Weigold had an interest to testify in favor of the prosecution in an effort to curry favor with the authorities regarding his own case. Respondent asserts that the Michigan Court of Appeals reasonably rejected this claim during Petitioner's appeal of right.

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407-08, 85 S. Ct. 1065, 1069 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 1076 (1965); *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 1110 (1974). In determining whether the exclusion of evidence or restrictions on cross-examination infringe upon a weighty interest of the accused, the relevant question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984).

In *Davis*, the Supreme Court examined whether the trial court's limits on the cross-examination of a key prosecution witness regarding a prior conviction violated the Confrontation Clause. The defendant in *Davis* had been convicted of grand larceny and burglary following a trial in which the court prohibited defense counsel from questioning a key prosecution witness, Green, concerning his juvenile record. Green was the sole witness who placed the defendant at the location where the stolen property was later discovered. At the time of trial and at the time of the events about which Green testified, Green was on probation by order of a juvenile court after having been adjudicated a delinquent for burglary. The prosecution moved for a protective order prohibiting defense counsel from questioning Green regarding his juvenile record.

-11-

In opposing the motion, defense counsel argued that he would not introduce Green's juvenile record as a means of impeaching Green's general character as a truthful person. Rather, he would introduce such testimony to show that at the time that Green was assisting the police in identifying the defendant, he was on probation for burglary. Defense counsel would then argue to the jury that Green acted out of fear or concern that his probation might be in jeopardy. Green, defense counsel theorized, may have identified defendant as a means of directing suspicion away from himself for a crime similar to the crimes for which he was on probation or he may have suffered undue pressure from the police to make an identification or risk possible probation revocation.

Defense counsel therefore sought to establish the existence of possible bias and prejudice, causing Green to make a faulty identification. The trial court ruled this testimony inadmissible. The Supreme Court held that the exclusion of such testimony denied petitioner his fundamental constitutional right to present a defense:

> [W]e . . . conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgement as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.' *Douglas v. Alabama*, 380 U.S. at 419. The accuracy and truthfulness of Green's testimony were key elements in the State's claim against the petitioner. . . .

> We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . . On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross examination which "would be constitutional error of the first magnitude . . . ."

-12-

*Davis*, 415 U.S. at 317-18 (1111) (quoting *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S. Ct. 1245, 1246 (1968)).

Here, the Michigan Court of Appeal decided Petitioner's claims as follows:

On appeal, defendant argues that the trial court erred in excluding evidence of a pending criminal sexual conduct (CSC) case against Weigold, the prosecution's key witness at trial. Defendant argues that he was denied his constitutional right to confront Weigold for purposes of testing his credibility. We disagree.

In an offer of proof outside the presence of the jury, Weigold testified that he had been charged with three counts of CSC involving minors, and had been released on bond. The case was investigated by the Michigan State Police and there were no discussions about his cooperation in this case benefitting the CSC case. Also, Weigold did not know what the sentencing guidelines would be if convicted of the charged CSC offenses. Weigold did not believe that his cooperation in the instant case would benefit his CSC case.

We hold that defendant failed to preserve his claim that he had a constitutional right to cross-examine Weigold about his pending CSC case, inasmuch as defendant did not object to the evidence on this specific ground. *People v. Asevedo*, 217 Mich. App. 393, 398 (1996). Hence, we limit our review of this latter issue to whether defendant has established a plain error affecting his substantial rights. *People v. Carines*, 460 Mich. 750, 763-765 (1999). The right to cross-examine witnesses is not without limits. *People v. Hackett*, 421 Mich. 338, 347(1984). A violation of the right of confrontation will be found when a trial court places limits on cross-examination that preclude a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility might be inferred. *People v. Cunningham*, 215 Mich. App. 652, 657 (1996); *People v. Mumford*, 183 Mich. App. 149, 153 (1990). But the right of confrontation does not include the right to cross-examine a witness on irrelevant issues and may bow to other legitimate interests of the trial process and society. *People v. Adamski*, 198 Mich. App. 133, 138 (1993). "'Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.*, quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Although a witness' bias may be induced, consciously or unconsciously, by the witness' self-interest in a case, we are not persuaded that the trial court here erred in excluding defendant's proffered evidence on the ground that defendant offered only speculation to support his position that the pending CSC case was probative of Weigold's credibility. *People v. Layher*, 464 Mich. 756, 763 (2001). The threshold

-13-

foundation for admitting such evidence is logical relevance. MRE 401; *Layher*, supra at 761. Because there was no evidence to support an inference that Weigold might color his testimony against defendant because of some expectation, consciously or unconsciously, that it would benefit him in the unrelated CSC case, there was an inadequate foundation for defendant to question Weigold about his CSC case in front of the jury.

Because defendant has not shown that he was denied a reasonable opportunity to test Weigold's credibilty with relevant evidence, we find no plain constitutional error. Defendant's reliance on *United States v. Landerman*, 109 F.3d 1053 (5th Cir. 1997), modified on other grounds 116 F.3d 119 (5th Cir. 1997), is misplaced because, unlike in *Landerman*, the evidence concerning Weigold's pending CSC case did not support an inference that Weigold had an incentive, consciously or unconsciously, to slant his testimony in this case.

*Brown*, 2004 Mich. App. LEXIS 2217, at *1-5.

This Court concludes the decision of the Michigan Court of Appeals on this issue involved an unreasonable application of the established Supreme Court standard. During defense counsel's voir dire examination of Weigold outside the presence of the jury, Weigold testified that his criminal charges were still pending, but he did not believe or expect that his testimony in Petitioner's case would benefit him. From this testimony – which Petitioner no doubt would have liked to dispute – the state appellate court concluded that there was no basis to suggest that Weigold was biased. In other words, in the absence of Weigold admitting that he was testifying in accord with the prosecutor's theory of the case in the hope of receiving some benefit in his own case, the state appellate court thought that Petitioner "offered only speculation to support his position that the pending CSC case was probative of Weigold's credibility." Of course, it is the very purpose and nature of cross examination to show that a witness is being untruthful. The whole point of the proffered cross examination was to show that Weigold had a motivation to testify in favor of the prosecution, with or without any promises being made to him. Logically, Weigold's motivation to offer testimony he might have thought the prosecutor wanted to hear included a denial that he hoped

-14-

for a benefit. Preventing Petitioner from informing the jury that – despite his denials – Weigold had a potential bias in favor of the prosecution denied Petitioner his Sixth Amendment right to confrontation. *See Vasquez v. Jones*, 486 F.3d 135, 145-146 (6th Cir. 2007) (exclusion of past criminal history of prosecution witness violated Petitioner's confrontation rights); *Hargrave v. McKee*, 248 F. App'x 718 (6th Cir. 2007) (trial court's prohibition of evidence that prosecution witness was diagnosed as a paranoid schizophrenic violated Petitioner's confrontation rights). The Michigan Court of Appeals decision to the contrary, resting on the idea that Weigold denied any expectation of favorable treatment, was objectively unreasonable.

Nevertheless, Petitioner has not demonstrated entitlement to habeas relief based on this claim. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S. Ct. 1710, 1718 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).

The evidence presented against Petitioner was overwhelming. Petitioner testified at trial and admitted that he shot the victim with an arrow and stabbed him two times with a hunting knife. His defense was self-defense. But that claim was contradicted by the physical evidence. The blood stains in the kitchen indicated that the victim was backing up after he had been struck by the arrow. Likewise, the bloody footprints on the inside door of the bathroom indicated that the victim was attempting to barricade himself inside. The angle of the fatal knife wound suggested that the victim was stabbed in the heart as he lay helpless on the bathroom floor. The multiple wounds caused by

-15-

multiple weapons, inflicted in different parts of the house belie Petitioner's claim that he acted in self defense.  In particular, the fact that the victim had basically barricaded himself in the bathroom after being shot with an arrow, but that Petitioner kicked in the door to attack him again, rendered Petitioner's self defense claim entirely incredible.  Furthermore, after the attack, Petitioner attempted to dispose of the knife in the bathroom garbage can, threw the bow over a fence, discarded his bloodly clothing, and fled to Georgia.  This is hardly the conduct of a person who was justifiably forced to kill someone in self defense.  In other words, even if Petitioner were allowed to impeach Weigold with his pending criminal charges, the physical evidence when combined with Petitioner's implausible self defense claim would have nevertheless led to his conviction.

The failure to allow cross examination in the topic was harmless for another reason. Weigold's contemporaneous statements to the 9-1-1 operator and to the police implicating Petitioner for the crime occurred at a time before he would have been able to ascertain any interest in slanting his testimony in favor of a story in which Petitioner was the aggressor.  Weigold's version of events – with the exception of the use of the bow trigger – were consistent from the moment he spoke with authorities, and contradicted Petitioner's claim of self-defense.  At the time Weigold made his initial statements, he could have had no idea how to slant his story in order to curry favor with the prosecution.  Accordingly, even if Petitioner were allowed to cross examine Weigold about his pending charges, the prosecutor could have easily rehabilitated him with the fact that his story did not change from the time of the incident.

Petitioner rejoins by asserting that Weigold did not mention the wrist trigger device in his initial statements to police, and that the use of this device supported the prosecutor's argument that

-16-

Petitioner premeditated the murder.[1]  If the victim died as a result of the arrow shot and the confrontation ended there, this argument might have some traction. But after Petitioner shot the victim - trigger or not - he twice stabbed the victim with a knife and kicked-in the bathroom door where the wounded victim had barricaded himself.  In this Court's view, Petitioner's self defense claim was a weak one that had no reasonable prospect of success whether or not the cross examination of Weigold had been permitted.

Petitioner further asserts that Respondent waived any harmless error argument and, citing *Stevens v. Bordenkircher*, 746 F.2d 342 (6th Cir. 1984), that the failure to allow cross examination of a key government witness concerning bias, prejudice, or motive can never be construed reasonably as harmless error.  Both of these assertions are incorrect.  Respondent specifically argued in its Answer that any error was harmless because it did not meet the *Brecht* standard.  *See* Dkt. 90, pp. 39-41.  Moreover, there is no rule that violations of *Davis* involving "key government" witnesses can never be harmless.  *Stevens*, a thirty-year old case, was decided before *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431 (1986), where, rather then set any such bright-line rules, the Supreme Court held that even on direct review whether such errors are harmless "depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of

---

[1] Oakland County Deputy Robert Charlton described how a trigger release attaches to a shooter's wrist and aids him in the drawing and releasing of the bowstring to shoot an arrow.  Trial Tr. 2/3/2003, at 253-54.  The prosecutor argued that the extra time required to put on the trigger release constituted evidence that Petitioner premeditated the shooting.

-17-

the prosecution's case." 475 U.S. at 684. *Stevens* was also decided before *Brecht*, which also set forth a more generalized harmless-error standard for determining whether a trial error entitles a habeas petitioner to relief.

In the light of the overwhelming evidence of Petitioner's guilt, and the fact that Weigold's testimony was corroborative of his statements to police, the Court is not convinced that the exclusion of the impeachment evidence had a substantial or injurious effect or influence upon the jury's verdict. Therefore, habeas relief is not warranted on this claim.

**B. Jury Instruction Regarding Absence of Fingerprints on Knife**

Petitioner raises a number of claims (II, III, IV, V, VI, XV, and XVII) concerning the trial court's response to a jury note indicating that no fingerprints were found on the knife. Petitioner asserts that the answer amounted to providing the jury with unsworn "surrogate" testimony, violated his right to be present, violated his right to a public trial, violated his right to confrontation, and that his counsel was ineffective for failing to object to the answer.

The record shows that after jury deliberations began, the jury sent a note to the trial court asking whether the prosecution had introduced a "Forensic Report" regarding "Finger prints on knife." The judge responded that "A fingerprint report was not introduced into evidence." After deliberating for more than three and a half hours, the jury then sent a second note asking whether there was "Testimony of Sheriff Department? Re: finger prints on knife." The trial judge wrote back, "Please rephrase your question, you need to be more specific." The jury then wrote the following question to the judge:

> Is there any testimony regarding Randy Pardy's fingerprints on the hunting knife that was used in the murder? Some of the jurors claim to remember testimony about the knife, but there is some uncertainty.

-18-

T IV, pp. 32-33.  Both the prosecutor and Petitioner's lawyer suggested outside the presence of the jury that the judge simply instruct the jury to "use [their] collective memories as to what the testimony was."  *Id.* at 33.  The judge, however, said he believed he "owe[d] a duty to search the record as best I can to see if there is some testimony."  *Id.*  The judge then told the jury he "would have to search the record" to answer the jury's question.  *Id.* at 35.  Proceedings were then adjourned for the weekend.

On the following Monday morning, court resumed.  Petitioner was not present in the courtroom.  After an off-the-record conference, the judge sent the following written instruction to the jury: "There were no fingerprints found on the knife."  T V, p. 3.  The attorneys stipulated to the contents of the note.  *Id.*  An hour later, the jury returned a verdict, finding Petitioner guilty of first-degree murder and assault with a dangerous weapon.

Petitioner claims that multiple constitutional violations resulted from this series of events.  First, he claims that the instruction amounted to the introduction of unsworn testimony that no fingerprints were found on the knife, a fact not demonstrated at trial.  Petitioner claims that he was denied his right to be personally present when the events unfolded, and that he was likewise denied his right to a public trial because much of it happened at an off-the-record side bar.  He also alleges that the new evidence was not subject to cross examination and therefore his confrontation rights were violated.  Finally, he alleges that his counsel was ineffective for allowing the whole transaction to occur without objection.

The Michigan Court of Appeals denied these claims as follows:

[D]efendant waived any challenge to the trial court's answer to the jury's question about fingerprint evidence by stipulating to the answer. The waiver extinguished any error. *People v. Carter*, 462 Mich. 206, 216 (2000). Defendant's alternative claim of ineffective assistance of counsel is not properly before us because it is not set forth

in the statement of the questions presented. M.C.R. 7.212(C)(5); *People v. Albers*, 258 Mich. App. 578, 584 (2003). In any event, limiting our review to the record, we find that defendant has not established any entitlement to relief based on ineffective assistance of counsel. *People v. Riley (After Remand)*, 468 Mich. 135, 139-140 (2003).

*Brown*, 2004 Mich. App. LEXIS 2217, at *16-17.

With respect to Petitioner's claim that he was denied his right to be present, a defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987). This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005) (quoting *Stincer*, 482 U.S. at 745). "In other words, the defendant's presence is not guaranteed when it would be 'useless,' but only 'to the extent that a fair and just hearing would be thwarted by his absence." *Id*. (quoting *Brika*, 416 F.3d at 526).

In *Buell v. Mitchell*, 274 F.3d 337, 364 (6th Cir. 2001), the Sixth Circuit found that a meeting similar to a bench conference at which the trial judge and counsel discussed the answer to a jury question was not sufficiently similar to jury instructions such that the Petitioner's presence was required where the Petitioner's counsel agreed to the answer given to the jury. This case is similar enough to *Buell* that the state court's determination that Petitioner's right to be present was not violated was not objectively unreasonable. As in *Buell*, Petitioner's counsel agreed to the answer to the note. That is, if the Sixth Circuit could reject Buell's similar claim, it was not outside the bounds of plausible outcomes for the state court to reject Petitioner's similar claim in this case.

With respect to his claim that the bench conference occurred in violation of Petitioner's right

-20-

to a public trial, this claim is also without merit.  Side bar and in camera conferences are a commonplace occurrence during criminal trials that simply do not implicate the right to a public trial. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25, 102 S. Ct. 2613, 2621 n.25 (1982) (holding that a trial court has traditional authority to conduct in camera conferences); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23, 100 S. Ct. 2814, 2839 n.23 (1980) (Brennan, J., concurring) (stating that "the presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interest of decorum," including the exclusion of the public and the press from conferences at the bench and in chambers where such conferences are distinct from trial proceedings); *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977) (holding that "bench conferences between judge and counsel outside of public hearing are an established practice, … and protection of their privacy is generally within the court's discretion. . . . Such conferences are an integral part of the internal management of a trial, and screening them from access by the press is well within a trial judge's broad discretion.").

Petitioner's confrontation claim is likewise without merit.  Petitioner's counsel stipulated to the note informing the jury that no fingerprints were found on the knife.  Recently, in *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2718-2719 (2011), the Supreme Court confirmed that the Confrontation Clause is not implicated by the introduction of stipulated facts.  The fact that the parties stipulated to the answer also undermines Petitioner's claim that the trial court was partial, or instructed the jury with a mandatory presumption of fact.

This leaves the issue of ineffective assistance of counsel.  Petitioner asserts that his counsel should not have stipulated that no fingerprints were found on the knife.  Petitioner's pleadings include an affidavit from his trial counsel that states that he only stipulated to the note because he

felt overpowered by the prosecutor and the trial judge.

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689, 104 S. Ct. at 2065. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690, 104 S. Ct. at 2066. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689, 104 S. Ct. at 2065.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied

-22-

on as having produced a just result." *Id.* at 686,  104 S. Ct. at 2064.

*Stickland* sets forth the standard on direct review.  In a federal habeas action, review is more circumscribed.  The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance.  "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).  "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.*  Also, because this claim was adjudicated on the merits in the state court, the Court's review of this claim is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Furthermore, because there is no state court record indicating the reasons for defense counsel's decision to stipulate to the note sent to the jury, Petitioner must overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment with decision-making based on the existing trial record alone. *Id*.

Petitioner's ineffective assistance of counsel claim fails because, based on the existing state court record, a reasonable argument can be made that counsel satisfied *Strickland'*s deferential standard.  Petitioner bears the burden of rebutting the presumption that trial counsel acted "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 5 (2003) (per curiam).

The jury obviously was uncertain whether the victim's fingerprints were found on the knife.

-23-

In fact, there was no evidence offered at trial indicating whether the knife was analyzed for fingerprints. The most accurate answer to the jury's question simply would have stated that there was no evidence offered on the point. That would leave open the possibility that fingerprints were present, but not tested for. The answer given, "There were no fingerprints on the knife," did not indicate that the victim did not hold the knife. It only indicated that there were no fingerprints.

Of course the other possibility is that the knife was tested and no fingerprints were found, and neither party bothered to admit evidence regarding this inconclusive fact. One could imagine that the prosecutor did not offer the evidence because he had Petitioner's admission that he stabbed the victim. And one could imagine that defense counsel did not offer the evidence because a negative test was less helpful than no test being performed at all. Again, because the state court record does not reveal what occurred or defense counsel's reasons for his actions, there could be any host of reasons for agreeing to the answer given to the jury question.

The uncertainty works against Petitioner. Under *Strickland*, *Richter*, and *Cullen*, it is his burden to overcome the presumption of effective assistance and to do so based on the existing record. He has not done so. The *Strickland* Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Given the possibility that Petitioner's counsel stipulated to the answer because he felt nothing substantial could be gained from an alternate wording that risked a reopening of proofs, Petitioner has not demonstrated relief with respect to this claim. As the Court stated in *Stickland*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as

-24-

having produced a just result." *Id*. at 686,  104 S. Ct. at 2064.  In light of the existing record, the Court cannot conclude that the state court unreasonably adjudicated this claim.

## C. **Voluntariness of Statement to Police**

Petitioner's seventh claim asserts that his statements to police at the jail were admitted into evidence in violation of his *Miranda* rights when, during cross examination of Petitioner, the prosecutor asked him about his propensity for violence.

On direct appeal, the Michigan Court of Appeals denied relief with respect to this claim as follows:

> Because defendant denied, on cross-examination by the prosecutor, making a statement to Sergeant Miller about acting out in a violent manner, and because the prosecutor did not offer extrinsic evidence of the statement, we find it unnecessary to address defendant's claim that the trial court erred in permitting testimony about the statement. The jury was instructed that the lawyer's questions to the witnesses were not evidence. "It is well established that jurors are presumed to follow their instructions." Graves, supra.

*Brown*, 2004 WL 1857995, at *6.

During the prosecutor's cross examination of Petitioner, the prosecutor asked Petitioner whether he had a "short fuse."  Petitioner denied that he did.  The prosecutor then asked Petitioner whether he told Detective Miller in the jail that sometimes he acts out violently.  Petitioner answered that he did not.  Defense counsel objected, stating that Petitioner had counsel at the time he was in jail, and that the Detective was prohibited from questioning him about statements he made as the result of questioning.  The prosecutor responded that Petitioner volunteered the statement, and that it was being used to impeach Petitioner's testimony that he does not have a short fuse.  The question was allowed, but Petitioner again denied that he made any such statement.  T 2/6/03, pp. 177-186. The prosecutor never offered any testimony from the detective about the statement being made.

The Fifth Amendment protects a defendant from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Any statements taken in violation of the Fifth Amendment right against self-incrimination are excluded from the State's case in chief. *See Miranda v. Arizona*, 384 U.S. 436, 462, 86 S. Ct. 1602, 1621 (1966). Additionally, the Supreme Court has held that after an accused clearly invokes his right to have counsel present during a custodial interrogation, officers must cease all questioning and may not reinitiate questioning on any matter until counsel is provided, "unless the accused himself initiates further communications, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885 (1981). Statements obtained in violation of *Miranda* may, however, be used at trial to impeach the defendant's testimony. *See Oregon v. Elstad*, 470 U.S. 298, 307, 105 S. Ct. 1285, 1292 (1985). Petitioner's alleged statements to the Detective were used only to cross-examine Petitioner regarding his denial that he was a violent person. The statements were used to impeach Petitioner's prior testimony. Because the use of the statements for impeachment was permissible, even if the statements were obtained in violation of *Miranda*, there was no unreasonable application of federal law as established by the Supreme Court of the United States.

## D. Prosecutorial Misconduct

Petitioner's eighth claim asserts multiple allegations of prosecutorial misconduct. In his related twelfth claim, he asserts that his trial counsel was ineffective for failing to object to the conduct. Specifically, Petitioner claims that the prosecutor expressed a personal belief in his guilt, shifted the burden of proof, appealed to the jury's sympathy, misstated the law of self defense, and stipulated to an unsupported supplemental instruction.

The United States Supreme Court has made clear that prosecutors must "refrain from

improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1874 (1974); *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly* is the proper standard).

The Michigan Court of Appeals denied Petitioner relief with respect to these claims as follows:

> Next, defendant argues that he was denied due process and a fair trial as a result of the prosecutor's misconduct. We disagree. Although we generally review claims of prosecutorial misconduct de novo, *People v. Abraham*, 256 Mich. App. 265, 272 (2003), defendant's claims that were not preserved with an appropriate objection at trial are reviewed for plain error affecting defendant's substantial rights. *Carines*, supra. We examine the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *Abraham*, supra at 272-273.
>
> We reject defendant's claim that the prosecutor improperly expressed a personal opinion with respect to his guilt. Examined in context, the prosecutor's challenged opening statement about this case being very simple suggested that the jury would hear strong evidence about defendant's guilt.
>
> Also, the prosecutor's remarks in closing argument about defendant being afforded his right to a trial did not suggest that the jury suspend its power of judgment in favor of a prosecutorial belief in defendant's guilt. Rather, the prosecutor suggested that the jury find defendant guilty based on the strength of the evidence. A prosecutor is free to present and argue the evidence and all inferences arising from it as they relate to the prosecutor's theory of the case. *People v. Bahoda*, 448 Mich. 261, 282 (1995). We conclude that the prosecutor's remarks were not improper.
>
> Also, we find no basis for relief based on defendant's challenge to the prosecutor's rebuttal remarks about law enforcement officers and the prosecutor's office doing all that could be done. The record supports the prosecution's position on appeal that the remarks were responsive to defense counsel's closing argument. In particular, defense counsel suggested that everyone involved in the investigation was result-driven to obtain a conviction when he commented in closing argument, "You know you've got to know how the system works. Somebody's murdered, the cops

-27-

say murder. Somebody's killed, who did it, they go get the guy. Now their job, the prosecutor's, everybody, is let's get a conviction." Examined in the context of these remarks, the prosecutor's challenged rebuttal remarks did not plainly suggest that the jury convict defendant based on the prosecutor's personal belief, but rather once again asked the jury to decide the case based on the evidence.

Furthermore, even if the prosecutor's remarks could be considered plain error, improper prosecutorial remarks which respond to issues raised by defense counsel do not necessarily require reversal. *People v. Jones*, 468 Mich. 345, 353 (2003). The invitation, defense counsel's conduct, and the proportionality of the response must be examined to determine if the error affected the fairness of the trial. *Id*. at 353-354. Considered in light of defense counsel's statement in his closing argument, we cannot say that defendant was prejudiced by the prosecutor's comments. The prosecutor merely responded that the governmental units involved in the case did their jobs and that it was now the jury's job to decide the outcome of defendant's case.

Defendant next argues that the prosecutor committed misconduct in his rebuttal argument by twice shifting the burden of proof. Having examined the prosecutor's challenged remarks in context, we find no plain error warranting relief. The prosecutor's argument regarding actions that defense counsel could have taken before trial were a fair response to defense counsel's closing argument that Weigold's testimony about defendant wearing a trigger release was a "bombshell." *Jones*, supra at 352 n 6. Although a prosecutor's remarks that tend to shift the burden of proof to a defendant are improper, once a defendant presents evidence or a theory, the prosecutor may comment on the weakness of the defendant's evidence or theory. *People v. Fields*, 450 Mich. 94, 115; 538 N.W.2d 356 (1995).

Similarly, the prosecutor's rebuttal argument about the absence of defense proofs that Pardy was a violent person were not plainly improper in light of the defense theory that Pardy was the aggressor and the prosecutor's acknowledgement in his rebuttal remarks that the burden was on the prosecution to disprove self-defense. *Id*. at 115-116. "When a controversy arises regarding whether the deceased was the aggressor, a jury's persuasion may be affected by the character of the deceased because it will shed light on the probabilities of the deceased's actions." *People v. Harris*, 458 Mich. 310, 315-316 (1998).

Defendant also argues that the prosecutor made improper appeals to the jury's sympathy during his closing and rebuttal arguments. The challenged remarks include one instance in which defense counsel objected on the ground that the remarks constituted an appeal to sympathy and the trial court sustained the objection. Although defense counsel did not request a curative instruction, the trial court later instructed the jurors that "you may not let sympathy or prejudice influence your decision." And jurors are presumed to follow their instructions. *People v. Graves*,

-28-

458 Mich. 476, 486 (1998). Under these circumstances, we do not find the challenged remarks so inflammatory as to cause prejudice. Hence, while the record supports defendant's claim that the prosecutor made some remarks that may be characterized as an appeal to the jury's sympathy, reversal on this ground is not warranted. *People v. Watson*, 245 Mich. App. 572, 591-592 (2001).

Defendant further argues that the prosecutor committed misconduct by misstating the law regarding self-defense when cross-examining him, and later in his rebuttal closing argument. Because defendant did not object to the prosecutor's cross-examination on the ground that the prosecutor misstated the law, we review this claim for plain error affecting defendant's substantial rights. *People v. Kimble*, 470 Mich. 305, 309 (2004); *Carines*, supra at 763. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial. However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *People v. Grayer*, 252 Mich. App. 349, 357 (2002) (citations omitted).

The record does not plainly indicate that the prosecutor expressly misstated the law during his cross-examination of defendant. To the extent the prosecutor's questions could be viewed as misleading with respect to the legal standard for self-defense, reversal is not warranted because defendant has not shown any error with respect to the trial court's jury instructions regarding self-defense, and the court's instructions were sufficient to dispel any prejudice. Similarly, any misleading effect of the prosecutor's challenged remarks during rebuttal argument, which were objected to by defense counsel at trial on the ground that they were misleading, was dispelled by the court's jury instructions. Hence, reversal on this ground is not warranted. *Grayer*, supra.

Also, defendant argues that the cumulative effect of the prosecutor's misconduct at trial requires reversal. We disagree. Any errors demonstrated by defendant do not require reversal. Accordingly, defendant was not denied a fair trial. *People v. Bahoda*, 448 Mich. 261, 282 n 64 (1995).

*Brown*, 2004 WL 1857995, at *9-15.

The Michigan Court of Appeals reviewed each of Petitioner's claims of prosecutorial misconduct in light of the record as a whole and, whether the state court reviewed the alleged errors under an abuse of discretion standard or a plain error standard, it looked first to whether the complained conduct was improper. If so, the state court next determined whether the improper conduct rendered Petitioner's trial unfair. This Court has reviewed the complained-of portions of

-29-

the prosecutor's conduct, and for the reasons stated by Respondent in its extensive discussion of these claims, the Court agrees with the state appellate court's assessment of his claims. Considering the extensive state court analysis of Petitioner's prosecutorial misconduct claims, Petitioner fails to establish that the state court determination rejecting his prosecutorial misconduct claims were contrary to, or an unreasonable application of, clearly established Supreme Court law. Likewise, because Petitioner's prosecutorial misconduct claims are without merit, Petitioner's trial counsel was not ineffective for failing to make objections. *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief based on these claims.

**E. Exclusion of Defense Witness**

Petitioner's ninth claim asserts that he was denied his right to present a defense when the trial court prohibited him from calling a witness that had not been listed on his witness list. This claim was rejected on the merits by the Michigan Court of Appeals during Petitioner's appeal of right.

Federal law is clear on the right to present a defense. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146-47 (1986). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017 (1996). The Supreme Court gives trial court judges wide latitude to exclude certain evidence. *Id*. (quoting *Delaware*, 475 U.S. at 679). A violation of the right to present a defense is not established by showing merely that the trial court excluded evidence relevant to a defense.

-30-

Rather, a petitioner must show that the exclusion of evidence "significantly undermined fundamental elements of the accused's defense." *United States v. Scheffer*, 523 U.S. 303, 315, 118 S. Ct. 1261, 1267-68 (1998).

> The Michigan Court of Appeals rejected Petitioner's claim as follows:
>
> Defendant next argues that the trial court erred by precluding him from calling an unendorsed witness to impeach Weigold's testimony. Defendant claims that the trial court's ruling deprived him of his due process right to present a defense. But because defendant has insufficiently briefed the basis of the trial court's ruling, namely, defendant's failure to comply with a pretrial discovery order, we could decline to address this issue. *Kelly*, supra. Nevertheless, we find it was within the trial court's discretion to deny defendant's tardy motion to have the unendorsed witness testify. M.C.R. 6.201(J); *People v. Davie (After Remand)*, 225 Mich. App. 592, 597-598 (1997). After reviewing the record, we find no basis for disturbing the trial court's decision.
>
> Having considered defendant's newly raised claim that he was deprived of his constitutional right to present a defense, in light of the trial court's ruling that defendant's tardy offer of the unendorsed witness violated the pretrial discovery order, we find no plain constitutional error. *Carines*, supra at 763. A defendant's due process right to present a defense is not absolute. *People v. Hayes*, 421 Mich. 271, 279 (1984). "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Toma*, 462 Mich. 281, 294 (2000), quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

*Brown*, 2004 WL 1857995, at *7-9.

Petitioner wished to call an unendorsed witness to testify that Petitioner arrived home on the day of the incident at 4:30 or 5:00 p.m., rather than at 2:30 p.m., as Weigold testified. The difference in timing was not particularly relevant because the incident occurred after 5:00 p.m. The trial court denied the request because the witness had not been endorsed on the defense witness list as requited by state law and because the proposed testimony involved a collateral issue. Because the trial court's decision to not permit the witness that Petitioner wanted to call did not "significantly

undermined fundamental elements of the accused's defense," the Michigan Court of Appeals rejection of the claim did not involve an unreasonable application of clearly established Supreme Court law.

## F. Jurisdiction of Trial Court

Petitioner's tenth claim asserts that the trial court lacked jurisdiction to try him, and his eleventh claim asserts that there were defects during the arraignment that divested the court of jurisdiction. These claims do not form a cognizable basis for granting habeas relief.

The determination of whether a state court is vested with jurisdiction under state law is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). It is well-settled that a perceived violation of state law may not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review. *See Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Any state-law procedural defect in the state district court proceedings that affected the jurisdiction of the state circuit to try him does not implicate Petitioner's federal constitutional rights.

## G. Claims Regarding Procedural Default

Petitioner's thirteenth claim asserts that the language of the Michgian Supreme Court's order denying him relief during his state post-conviction review proceeding forecloses Respondent from

-32-

raising a procedural default defense.  His fourteenth claim asserts that the ineffective assistance of his appellate counsel excuses his failure to raise some of his claims during his direct appeal.

Both of the these claims are in response to Respondent's argument that the claims raised for the first time in Petitioner's motion for relief from judgment in the state trial court are procedurally barred.  The Court, however, has reviewed all of Petitioner's claims on the merits.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional.  *See Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997).  Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25, 117 S. Ct. 1517, 1523 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings).

Here, in the interests of judicial economy, the Court analyzed all of Petitioner's claims on the merits.  Accordingly, the resolution of Petitioner's thirteenth and fourteenth claims, which only seek to rebut the procedural default defense, have no bearing on the outcome of this case.

## H. Self Defense Jury Instruction

Petitioner's sixteenth claim asserts that the trial court erred in the instructing the jury on self defense and imperfect self defense.  He claims that the instruction incorrectly stated the "deadly aggressor withdrawal" aspect of self defense and shifted the burden of proof to Petitioner.  This claim was raised in the state courts in Petitioner's delayed motion for new trial.  The trial court

-33-

denied the motion "for lack of merit in the grounds presented" in an opinion and order dated December 17, 2010.

The trial court instructed the jury on self defense and imperfect self defense as follows:

The defendant claims that he acted in lawful self-defense. A person has the right to use force , and even take a life, to defend himself under certain circumstances. If a person acts in lawful self-defense, his actions are excused and he is not guilty of any crime.

You should consider all of the evidence and use the following rules to decide whether the defendant acting in lawful self defense. Remember to judge the defendant's conduct according to how the circumstances appeared to him at the time he acted.

First, at the time he acted, the defendant must have honestly and reasonably believed that he was in danger of being killed of seriously injured. If his belief was honest and reasonable, he could act immediately to defend himself, even if it turned out later that he was wrong about how much danger he was in. In deciding if the defendant's belief was honest and reasonable, you should consider all of the circumstances as they appeared to the defendant at the time.

Second , a person may not kill or seriously injure another person just to protect himself against what seems like a threat of only minor injury. The defendant must have been afraid of death or serious injury.

When you decide if the defendant was afraid of one or more of these, you should consider all of the circumstances, the condition of the people involved, including their relative strength, whether the other person was armed with a dangerous weapon or had some other means of injuring the defendant, the nature of the other person's attack or threat, whether the defendant knew about any previous violent acts or threats made the other person.

Third, at the time he acted, the defendant must have honestly and reasonably believed that what he did was immediately necessary. Under the law, a person may only use as much force as he thinks is necessary at the time to protect himself. When you decide whether the amount of force used seemed to be necessary, you may consider whether the defendant knew about any other ways of protecting himself, but you may also consider how the excitement of the moment affected the choice the defendant made.

Members of the jury, if a person assaulted the defendant in the defendant's own home, or forcibly entered the defendant's home, the defendant did not have to try to

retreat or get away. Under those circumstances the defendant could stand his ground and resist the attack or intrusion with as much force as he honestly and reasonably believed necessary at the time to protect himself.

If you find that the defendant, Philip Brown, started an assault on Randy Pardy with a dangerous weapon, defendant cannot claim that he acted in self defense unless he genuinely stopped his assault and clearly let Randy Pardy know that he wanted to make peace. Then, if Randy Pardy kept on fighting or started fighting again later, the defendant had the same right to defend himself as anyone else and could use force to save himself from immediate physical harm.

The defendant does not have to prove that he acted in defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in the defense.

T 2/7/03, pp. 19-21.

To the extent that Petitioner is alleging that the challenged instruction violated Michigan law, such claims are not cognizable on federal-habeas review. *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 481-482 (1991) (the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief). Here, the trial court denied this claim for "lack of merit in the grounds presented," essentially rejecting the premise that the instructions were erroneous.

A habeas challenge to a jury instruction requires the petitioner to establish that the jury charge, considered in the context of the instructions as a whole, "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400 (1973). To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir. 1997). The category of infractions that can render an entire trial fundamentally unfair is narrow. *Estelle*, 502 U.S. at 73. Further, a challenge to a jury instruction is not to be viewed in "'artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147, 94 S. Ct.

at 400-01).

Petitioner cannot show that the state trial court's decision denying his jury instruction claim as without merit was contrary to or an unreasonable application of clearly established Supreme Court precedent. The state trial court properly instructed the jury on the applicable law based on the evidence presented. Petitioner has not shown that the trial court undermined his defense by instructing the jury on "deadly aggressor withdrawal," nor has he shown that the trial court shifted the burden of proof. In fact, the trial court repeatedly instructed the jury that the prosecutor must prove each element of the offense beyond a reasonable doubt and that the defendant was not required to prove his innocence or do anything. As indicated above, the trial court specifically instructed the jury that "[t]he defendant does not have to prove that he acted in self-defense," and that "[i]nstead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense."

Further, as the State previously noted, there was overwhelming evidence of guilt against Petitioner , showing that Petitioner did not act in self defense, but instead planned to attack (and did attack) Randy Pardy. The jury had the opportunity to listen to and observe Petitioner testify, and evidently did not find him credible. Evidence also showed that Petitioner had no concern for Pardy's well-being and that Petitioner tried to cover up the crime and fled the state afterward. Petitioner has failed to show that any error in the instructions resulted in a substantial and injurious effect on the jury's verdict.

Therefore, Petitioner challenge to the instructions does not reach the high threshold established by the AEDPA for the granting of habeas relief.

**IV. Certificate of Appealability**

-36-

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 8 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003).

While the Court continues to believe that Petitioner is not entitled to a writ of habeas corpus for the reasons set forth above, the Court believes that the issues related to the exclusion of evidence regarding Weigold's pending charges (Claim I) and the trial court's answer to the jury note (Claims II, III, IV, V, VI, XV, and XVII) may be "debatable among jurists of reason." For this reason, the Court does not believe Petitioner should be denied the opportunity to seek appellate review of these issues. The Court does not find the remaining issues raised in the petition debatable among jurists of reason. Finally, the Court will grant Petitioner permission to proceed on appeal in forma pauperis.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to claims I, II, III, IV, V, VI, XV, and XVII, but **DENIED** with respect to the remaining claims.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is

**GRANTED**.




                                        s/Patrick J. Duggan
                                        United States District Judge

Dated: June 12, 2014