UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PHILLIP BROWN,

        Petitioner,                              Case Number 09-CV-14850

v.                                         Honorable Patrick J. Duggan

PATRICIA CARUSO,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S
## MOTION FOR RECONSIDERATION

### I.  INTRODUCTION

Petitioner Phillip Brown, a state prisoner, filed this habeas case under 28 U.S.C. § 2254.  On June 12, 2014, the Court issued its Opinion and Order denying the petition but granting a certificate of appealability with respect to Claims I, II, III, IV, V, VI, XV, and XXVII.  Presently before the Court is Petitioner's motion for reconsideration, asserting that the Court erred in its factual findings and analysis of several of Petitioner's claims.

### II.  LEGAL STANDARD

Local Rule 7.1(h) allows a party to file a motion for reconsideration.  However, a motion for reconsideration which presents the same issues already ruled upon by the

court, either expressly or by reasonable implication, will not be granted.  *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001).  The movant must not only demonstrate a palpable defect by which the court and the parties have been misled, but also that a different disposition of the case will result from a correction thereof.  A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain.  *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

### III.  ANALYSIS

### A.  Factual Findings of Court

The motion first asserts that the Court erred in its factual findings.  Petitioner argues that the Court incorrectly stated that "Pardy's wife and father arrived at Petitioner's house and discovered that Pardy was dead."  The statement is correct. The record shows that when the pair arrived at the scene an officer informed them that the victim had died.  T I, p. 162.  The Court did not state or suggest that Pardy's wife or father were the ones who first found the victim.

Next, Petitioner asserts that the Court erroneously stated that there was blood found throughout the kitchen and bathroom.  The Court's statement is correct. Droplets of blood were found on the kitchen floor, T I, p. 244, blood was found on different locations of the refrigerator, *id.*, p. 245-246, and blood was found in the bathroom.  *Id.*, pp. 175-176, 216-217, 266.  Blood and tissue were also found on the

knife in the bathroom. T I, pp. 243, 256-276. In any event, the relevance of the blood

at trial was not the amount found, but that it indicated that the victim retreated and

barricaded himself in the bathroom, undermining Petitioner's self-defense claim.

Petitioner also asserts that the Court erroneously stated that Petitioner was

arrested in Georgia when in fact he turned himself in to police the day following the

crime. The police witnesses testified that Petitioner fled to Georgia following the

homicide. There, he was arrested and his car was impounded, T II, pp. 176-177, 212,

and he was later extradited to Michigan. T II, p. 212. Petitioner testified in his own

defense that he turned himself in. T III, p. 189. Petitioner's defense counsel in

closing argument tried to explain why Petitioner fled to Georgia after the homicide.

T IV, p. 239.

Petitioner asserts that the Court unfairly referred to the knife used to stab the

victim as a "hunting knife." The knife was admitted as an exhibit at trial. It was

described as a heavy two-sided knife, serrated on one side, and sharp on both sides.

T I, pp. 243, 256-276. The Court's description is a fair representation of the record

evidence.

Petitioner asserts that there were no bloody footprints found on the inside of the

bathroom door. This assertion is correct. The police testimony indicated that

footprints from the victim's shoes were found on the inside of the bathroom door. T

I, pp. 268-274. The officer did not state that the prints were made with blood. The mistake, however, is not significant. The relevance of the footprint on the inside of the bathroom door was that it suggested that the victim had attempted to barricade himself inside after being shot with the arrow–undermining the self-defense claim. It is irrelevant what substance made the impression on the door.

Finally, Petitioner asserts that there was no evidence that the victim was wounded in different parts of the house. The blood trail evidence shows that the victim was shot with the arrow outside of the bathroom and that he was stabbed on floor of the bathroom.

None of the alleged inaccuracies in the Court's description of the record evidence show that a different disposition of the case must result.

### B.  Extraneous Influence on Jury Claim

Petitioner next asserts that the Court failed to address one of his claims – his claim that the trial court's response to a jury question that there were no fingerprints found on the knife constituted an extraneous influence, violating Petitioner's right to a fair trial and an impartial jury, as no such evidence was presented at trial.

This claim, along with the related claims concerning the answer to the jury question, were discussed together in Section III(B) of the opinion. As indicated in the opinion, Petitioner's counsel agreed to the answer given to the jury. T V, p. 3. Clearly

2:09-cv-14850-PJD-VMM   Doc # 116   Filed 03/20/15   Pg 5 of 9   Pg ID 3815

established Supreme Court law did not require Petitioner to be present for the stipulation, *Buell v. Mitchell*, 274 F.3d 337, 364 (6th Cir. 2001), and Petitioner has not demonstrated that his counsel was otherwise ineffective for stipulating to the answer.

In any event, a claim that a juror was subject to extraneous influence or that the jury was exposed to extrinsic evidence is subject to harmless error analysis. *See Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000); *Pyles v. Johnson*, 136 F.3d 986, 992 (5th Cir. 1998); *Sherman v. Smith*, 89 F.3d 1134, 1138-40 (4th Cir. 1996). Even if an extraneous influence occurred, Petitioner is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 121-22, 127 S. Ct. 2321, 2328 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review). "There is no bright line test for determining whether a defendant has suffered prejudice from an instance of juror misconduct." *Sassounian v. Roe*, 230 F.3d 1097, 1109 (9th Cir. 2000) (internal quotation omitted). In assessing the possibility of prejudice, a court must "review[] the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." *United*

*States v. Weiss*, 752 F.2d 777, 783 (2d Cir. 1985).  However, "[i]n a habeas corpus proceeding, a state court's findings on whether, and how, extraneous matters affected jury deliberations 'deserve[ ] a "high measure of deference."'" *Mahoney v. Vondergritt*, 938 F.2d 1490, 1492 (1st Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 120, 104 S. Ct. 453, 456 (1983) (in turn quoting *Sumner v. Mata*, 455 U.S. 591, 598, 102 S. Ct. 1303, 1307 (1982))).  As explained more fully on pages 15-16 of the Court's opinion denying the petition, the weight of the evidence against Petitioner was overwhelming.  There is no reasonable probability that the result of the trial would have been different had the jury been instructed that there was no evidence regarding fingerprints on the knife rather than being informed that no fingerprints were found in the knife.

### C.  Constructive Denial of Counsel Claim

Petitioner next asserts that the Court did not address the claim that he was constructively denied counsel because, contrary to the Court's analysis, his trial counsel claimed in an affidavit that he never stipulated to the answer to the jury question.  Petitioner contends that his counsel's assertion that there was no stipulation removes his claim from the ordinary *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) mode of analysis, and places it into the *Cronic v. United States*, 466 U.S. 648, 104 S. Ct. 2039 (1984) category, in which prejudice is presumed.

While the Court acknowledged in the opinion that Petitioner included the affidavit with his petition, it did not rely on it in adjudicating the claim. Rather, the Court limited its review to "the existing state court record." ECF 109, p. 23. As explained in the opinion, in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), the Supreme Court held that where habeas claims had been decided on their merits in state court, as here, a federal court's review under 28 U.S.C. § 2254(d)(1) – whether the state court determination was contrary to or an unreasonable application of established federal law – must be confined to the record that was before the state court at the time. Counsel's affidavit was not before the state court when it decided this claim during his appeal of right. ECF 109, p. 20. Therefore, its contents cannot be considered in deciding Petitioner's claim under § 2254(d), and without it, Petitioner cannot prevail on his offered rationale for considering the claim under *Cronic* rather than *Strickland.*

## D. Prosecutorial Misconduct

Finally, Petitioner asserts that the Court did not address his claim that the prosecutor committed misconduct by stipulating to the answer to the jury question. The Court discussed Petitioner's multiple prosecutorial misconduct claims in Section III(D) of the opinion. This particular allegation, however, was not included in the discussion because it was not one of the claims Petitioner raised during his appeal of right.

Petitioner asserts that this particular allegation of misconduct was first raised in his motion for relief from judgment filed in the trial court.  The trial court denied the claim because Petitioner failed to demonstrate good cause under Michigan Court Rule 6.508(D)(3) for failing to raise it on direct appeal.  ECF 23-20, pp. 5-6.  The Michigan Court of Appeals denied relief under Rule 6.508(D), *People v. Brown*, No. 283419 (Mich. Ct. App. May 12, 2008), and the Michigan Supreme Court denied relief under Rule 6.502(G), which concerns successive post-conviction motions. *People v. Brown*, No. 137072 (Mich. Sup. Ct. March 23, 2009).

Respondent argued in its answer that the claim was therefore procedurally defaulted, and this Court agrees with that analysis.  Petitioner has not demonstrated why this allegation of misconduct was not included with those presented to the state court during his appeal of right.  Furthermore, for the reasons stated above, the stipulated answer to the jury question did not have a substantial impact on the result of the trial, and it was therefore harmless.

## IV.  CONCLUSION

For the reasons stated above, Petitioner's motion for reconsideration is **DENIED.**

**SO ORDERED.**

s/Patrick J. Duggan
United States District Judge

Dated: March 20, 2015

Copies to:
Paul D. Hudson, Esq.
Raina Korbakis, A.A.G.
Phillip Brown